United States Bankruptcy Court
Southern District of Texas
**ENTERED**
February 23, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-33948 |
| FIELDWOOD ENERGY LLC, *et al.*, | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |
| | § | |
| QUARTERNORTH ENERGY LLC AND CERTAIN OF ITS AFFILIATES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-3476 |
| | § | |
| ATLANTIC MARITIME SERVICES LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION

QuarterNorth filed a motion for reconsideration of the Court's December 7, 2021 oral ruling in this adversary proceeding. The motion alleges that the Court made manifest factual errors. The Court has concluded that it was mistaken on the factual premises of its oral ruling. Upon consideration of the correct facts, the Court revises its earlier ruling and concludes that Fieldwood's confirmed Plan extinguished Atlantic's alleged LOWLA privileges.

## BACKGROUND

Most of the relevant background is documented in the memorandum opinion issued on October 15, 2021. (ECF No. 84). Atlantic Maritime Services, LLC performed drilling services for Fieldwood Energy, LLC. (ECF No. 35 at 8). Fieldwood did not pay Atlantic and later filed for bankruptcy. (ECF Nos. 1 at 4; 31 at 7). Atlantic asserted privileges under the Louisiana Oil Well Lien Act ("LOWLA") on certain property owned by Fieldwood and other working interest owners. (ECF No. 35 at 9). On August 27, 2021 (the "Effective Date"), Fieldwood sold certain

assets to QuarterNorth Energy, LLC. (ECF No. 65 at 2–3). QuarterNorth alleges that it will likely be required to indemnify the working interest owners if Atlantic is successful in enforcing any LOWLA privileges. (ECF Nos. 24 at 31, 32; 32 at 23). QuarterNorth seeks a ruling that Fieldwood's bankruptcy plan (the "Plan") extinguished Atlantic's LOWLA privileges. (ECF No. 24 at 5).

The Court orally ruled on December 7, 2021 that Fieldwood's Plan did not extinguish Atlantic's LOWLA privileges and that Atlantic was no longer barred from proceeding with its LOWLA claims in Louisiana District Court. (ECF No. 138). The oral ruling was stayed by an order entered on December 15, 2021. (ECF No. 145). In issuing the oral ruling, the Court was mistaken on three facts: (1) that the Disclosure Statement failed to say that the Plan would extinguish the LOWLA claims; (2) that Fieldwood had previously indicated that the Plan would not cause Atlantic to lose any rights; and (3) that the Plan sought an injunction.

**Error One.** The Disclosure Statement says that Fieldwood filed an amended complaint in this adversary proceeding seeking a determination by this Court that "upon the satisfaction, settlement, and discharge of Atlantic's claims pursuant to the Plan, any Louisiana privileges held by Atlantic will be 'extinguished' under LOWLA section 4864, including any alleged Louisiana privileges that extend to the WIOs' working interests in such leases." (Case No. 20-33948, ECF No. 1285 at 57–58). The section heading for the reference to the adversary complaint is bolded, underlined, and italicized as "***Adversary Complaint Against Atlantic Maritime Services, LLC***." (Case No. 20-33948, ECF No. 1285 at 57).

**Error Two.** The Court misconstrued Fieldwood's statement that "Atlantic will not be prejudiced if the stay remains in place—particularly given that the Effective Date is anticipated to take place before Atlantic claims it "may" lose alleged rights (which the Debtors dispute) . . . ."

(Case No. 20-33948, ECF No. 1492 at 2).  On May 19, 2021, Atlantic moved this Court to lift the automatic stay to allow it to commence lawsuits against Fieldwood's co-working interest owners and to file *lis pendens* notices.  (Case No. 20-33948, ECF No. 1380).  In its motion, Atlantic alleged that its LOWLA liens may not be preserved if the stay were to remain in place.  (Case No. 20-33948, ECF No. 1380 at 1–2).  Fieldwood argued that the continued imposition of the stay would not cause Atlantic to miss its July 16, 2021 filing deadline because Fieldwood intended for its Plan to have gone effective before then, at which point Atlantic would no longer require relief from the stay.  (Case No. 20-33948, ECF No. 1492 at 2).  In its objection, Fieldwood states that the Debtors dispute whether Atlantic may lose alleged rights.  The Court construed that statement to mean that the Debtors disputed whether the plan would cause Atlantic to lose rights.  On closer examination, Fieldwood merely meant that it disputed whether the continued imposition of the stay would cause Atlantic to miss a deadline.[1]

**Error Three.**  The Disclosure Statement in support of the then-proposed Plan disclosed that that this adversary proceeding sought an injunction against Atlantic to prevent it from pursuing its alleged LOWLA privileges.  The Plan itself does not impose the injunction.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This adversary proceeding seeks enforcement of the Plan.  A bankruptcy court has continuing core jurisdiction to enforce its own orders.  *See Ins. Co. of N. Am. v. NGC Settlement Tr. & Asbestos Claims Mgmt. Corp. (In re Nat'l Gypsum Co.)*, 118 F.3d 1056, 1063 (5th Cir. 1997) (recognizing that actions calling on a bankruptcy court to construe and enforce its own orders are core proceedings).  Additionally, a proceeding is core if it "could arise only in the context of a bankruptcy case."

---

[1] While the Court referenced its interpretation of this objection in the oral ruling, it was not dispositive.

*Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014 (5th Cir. 1991) (citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987)).  Adjudicating this matter requires an interpretation of the Plan, which could only arise in the context of a bankruptcy case.  Venue is proper in this District consistent with 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

### I.   RECONSIDERATION AND REVISION

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure specifically provide for a motion for reconsideration.  *See Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n.1 (5th Cir. 2004); *In re Garrett-Beck Corp.*, No. 09-37774, 2012 WL 3727318, at *3 (Bankr. S.D. Tex. Aug. 27, 2012).  A motion to alter or amend, or for reconsideration, may be made under Federal Rules of Civil Procedure 59(e) or 60(b).  *Garrett-Beck*, 2012 WL 3727318, at *3.  Federal Rule of Civil Procedure 54(b) grants courts the discretion to *revise* interlocutory orders:[2]

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

FED. R. CIV. P. 54(b).[3]  *See Jackson v. Roach*, 364 Fed. App'x. 138, 139 (5th Cir. 2010) ("The order . . . was not a final judgment and thus, could be revised . . . ."); *Willhauck v. Halpin*, 919 F.2d 788, 793 (1st Cir. 1990) ("Where the lower court does not designate an order as final under Rule 54(b), it has the power to modify, revise, or even reverse its decision at any time prior to

---

[2] An interlocutory order is any order other than a final order.  *Order*, BLACK'S LAW DICTIONARY (11th ed. 2019).  A final order is an order that is dispositive of the entire case.  *Id.*

[3] Federal Rule of Bankruptcy Procedure 7054(a) applies Federal Rule of Civil Procedure 54(a)–(c) to adversary proceedings.  FED. R. BANKR. P. 7054(a).

making such a designation or properly closing the entire case."); *Hewitt v. McCrary*, 17-CV-10917, 2019 WL 1365135, at *1 (E.D. Mich. Mar. 26, 2019) ("[Rule 54(b)] gives district courts broad discretion to revise interlocutory orders . . . in order to prevent manifest injustice."). The Court may revise an interlocutory order "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Jackson*, 364 Fed. App'x. at 139.

QuarterNorth argues that Federal Rule of Civil Procedure 54(b) allows the court to reconsider an interlocutory order. (ECF No. 143 at 6–7). The Court's December 7, 2021 oral ruling focused only on Counts VI and IX of Fieldwood's amended complaint when the Court ruled that the "satisfaction" and "settlement" language in Fieldwood's Plan did not extinguish Atlantic's LOWLA liens. The oral ruling was not dispositive of the entire case—QuarterNorth still has other arguments by which it believes Atlantic is prevented from pursuing its LOWLA claims. Therefore, the oral ruling was an interlocutory order. The appropriate vehicle for amending the Court's interlocutory order is through the revision process of Rule 54(b). The Court finds sufficient reason to revise its December 7, 2021 oral ruling.

QuarterNorth seeks reconsideration under Rule 54(b), but reconsideration would also be appropriate under Rules 59 and 60. *See Garrett-Beck*, 2012 WL 3727318, at *3. Though the Court will, in the process of revising its interlocutory order, "reconsider" its ruling, Rule 54(b) only provides for revision. Because the oral ruling was an interlocutory order governed by Rule 54(b), the Court will revise its earlier ruling. *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933, 936 (5th Cir. 2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels); *Edwards v. City of Houston*, 78 F.3d 983, 995 (5th Cir. 1996) (*en banc*) (citing *Bros Inc. v. W.E. Grace Mfg. Co.*, 320 F.2d 594, 606 (5th Cir.1963)) ("[W]e have oft

stated that '[t]he relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.'").

## II. FIELDWOOD'S PLAN EXTINGUISHED ATLANTIC'S LOWLA LIENS

LOWLA exists in the Louisiana Revised Statutes. La. R.S. § 9:4861–9:4873. Its plain meaning should prevail. La. R.S. § 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language."); La. R.S. § 1:4 ("When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit."). The Louisiana Civil Code's rules of statutory interpretation are similar. La. Civ. Code art. 9 ("When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."); La. Civ. Code art. 11 ("The words of a law must be given their generally prevailing meaning. Words of art and technical terms must be given their technical meaning when the law involves a technical matter."). Under the Revised Statutes and Civil Code, undefined terms should be given their common usage. La. R.S. § 1:3; La. Civ. Code art. 11; *PADCO Energy Servs., LLC v. Case Energy Servs., LLC (In re PADCO Energy Servs., LLC)*, 610 B.R. 96, 108 (Bankr. W.D. La. 2019).

In 1995, the Louisiana legislature overhauled the previous Oil, Gas and Water Wells lien statute to create LOWLA. La. R.S. §§ 9:4861–4873; Patricia H. Chicoine, *Lien on LOWLA; It's a Privilege: Recent Revisions to the Louisiana Oil Well Lien Act*, 57 LA. L. REV. 1133, 1135 (1997). LOWLA grants privileges to those who perform services on well sites to secure the obligations incurred by their operations. La. R.S. § 9:4862. Similar to a common law lien, a privilege is a right of preference on property granted by statute to a creditor as security for its claim. La. Civ. Code art. 3186 ("Privilege is a right, which the nature of a debt gives to a creditor, and which

entitles him to be preferred before other creditors, even those who have mortgages.");[4] *Blasingame v. Anderson*, 236 La. 505, 519 (La. 1959) (citing *Grand Lodge Knights, Ladies Auxiliary, Juvs. of Honor of Am. v. Charles*, 224 La. 785, 790 (La. 1953)) ("[T]he party who claims or asserts [a privilege] must be able to put his finger on the law under which it is granted."); *Riverbend Condo. Ass'n v. Green (In re Green)*, 793 F.3d 463, 468 (5th Cir. 2015) ("[A privilege] is a nonconsensual device that arises as a matter of law."); *Toomer v. City of Lake Charles*, 392 So.2d 794, 797 (La. App. 1980); *Louisiana Law of Security Devices: A Precis* § 28.1 (2021).  A privilege arising under LOWLA is extinguished "[u]pon extinction of the obligation it secures." La. R.S. § 9:4864(B)(1).

Under Louisiana law, an obligation is "a legal relationship whereby a person, called the obligor, is bound to render a performance in favor of another, called the obligee.  Performance may consist of giving, doing, or not doing something." La. Civ. Code art. 1756.  According to the Louisiana Official Revision Comments, obligations are credit-rights.  *Id.* rev. cmnt. (c).  "Obligor" is synonymous with "debtor" and "obligee" is synonymous with "creditor."  *Id.*  Additionally, the word "obligation," without more, is synonymous with "civil obligation," which is an obligation that is enforceable by legal action.  La. Civ. Code art. 1760, rev. cmnt. (b); *see also* La. Civ. Code art. 1757 (1870) (1940 compiled ed.) (defining a civil obligation as "a legal tie, which gives the party, with whom it is contracted, the right of enforcing its performance by law.").

---

[4] Title 9 of the Louisiana Revised Statutes, also known as the Civil Code Ancillaries, abuts, and in some ways supersedes, the Louisiana Civil Code.  *See* A.N. Yiannopoulos, *Louisiana Civil Law: A Lost Cause?*, 54 TUL. L. REV. 830, 843 (1980) ("Title 9 of the Louisiana Revised Statutes has become the dumping place of legislation considered to be ancillary to the Civil Code. Such legislation frequently conflicts with the rules, principles, and policies of the Civil Code, which must be regarded as impliedly repealed."); Melissa T. Lonegrass, *The Anomalous Interaction Between Code and Statute—Lessor's Warranty and Statutory Waiver*, 88 TUL. L. REV. 423, 431 (2014) ("Statutory law creates 'fissures' in the code as large portions of the law are excised and housed elsewhere, or are simply overridden.").  LOWLA exists in the Revised Statutes.  La. R.S. § 9:4861–9:4873.  Given the interplay of the Civil Code and the Revised Statutes, it is reasonable to look to the Civil Code for interpretation where LOWLA is unclear.  In this case, there is no conflict between the two.

Louisiana law recognizes a difference between principal and accessory contracts. La. Civ. Code art. 1913 ("A contract is accessory when it is made to provide security for the performance of an obligation. . . . When the secured obligation arises from a contract, either between the same or other parties, that contract is the principal contract."). Courts have also recognized the difference between principal and accessory obligations. *See, e.g.*, *Colonial Bank v. Marina Seafood Mkt., Inc.*, 425 So. 2d 722, 724 (La. 1983) (finding an accessory obligation in the form of a mortgage to be invalid and unenforceable because the defendant owed no principal obligation). An accessory obligation provides security for a separate obligation while the obligation guaranteed by that security is the principal obligation. *Fairfield Dev. Co. v. Jackson*, 438 So. 2d 664, 667 (La. Ct. App. 1983).

An accessory obligation cannot exist without the principal obligation. *Id.* ("An accessory obligation may not exist without the coexistence of the principal obligation to which it lends support."); *The 'In Rem' Mortgage*, 44 TUL. L. REV. 497, 502 (1970) ("An accessory obligation does not stand on its own two feet."). Similarly, a privilege is an accessory right[5] that requires the

---

[5] QuarterNorth contends that privileges are accessory obligations. (ECF No. 118 at 21). At least one source refers to privileges as "accessory obligations." *See Louisiana Law of Security Devices: A Precis* § 34.4 ("Because privileges are accessory obligations . . . , the extinction of the debt that the privilege secures releases the accessory privilege.") This source refers to privileges as "rights" in an earlier chapter. *Id.* at § 28.1 ("A privilege . . . is defined as . . . 'a right . . . .'"). Because the Civil Code refers to privileges as "rights," it seems improper to refer to privileges as "obligations." *See* La. Civ. Code art. 3186. A privilege acts as security for enforcing a principal obligation. While an obligor's obligation is based on the principal obligation, the obligor does not have a separate obligation based on the privilege that exists as security for that principal obligation. For example, if a car owner incurs an obligation to a mechanic for services performed in repairing a car, the mechanic receives a privilege on the car to secure payment for that obligation. *See* La. Civ. Code art. 3217 ("The debts which are privileged on certain movables, are the following: . . . The debt of a workman or artisan for the price of his labor, on the movable which he has repaired or made, if the thing continues still in his possession."). The mechanic's privilege does not place an additional obligation on the car owner. Instead, the privilege is the mechanic's right which entitles him to be preferred before other creditors on the car. Similarly, the principal obligation in this matter is Fieldwood's obligation to pay Atlantic for the services Atlantic performed. LOWLA potentially grants Atlantic a privilege on certain property as security for Fieldwood's obligation. If found to be valid, the privilege would not be an additional obligation that Fieldwood owes, but a right that Atlantic would have over that property. Other courts refer to privileges as "rights." *See, e.g.*, *Dauzart v. Financial Indemnity Insurance Co.*, 39 So. 3d 802, 805 (La. Ct. App. 2010) (quoting *Toomer*, 392 So.2d at 799) ("[A] lien or privilege is only an accessory right to the claim or debt, providing security and payment by preference."); *Washington v. Washington*, 116 So.2d 125, 128 (La. Ct. App. 1959) ("Privilege is an accessory right . . . ."). While accessory obligations in the form of contracts do exist—such as suretyships, mortgages, and pledges—a privilege is not among

existence of a principal obligation. *See* La. Civ. Code art. 3277 ("Privileges become extinct . . . [b]y the extinction of debt which gave birth to it."); 5 Saul Litvinoff & Ronald J. Scalise Jr., Louisiana Civil Law Treatise, Law Of Obligations § 20.12 (2d ed. 2021) ("[A] privilege is accessory to the obligation the performance of which it secures. For that reason, as expressly provided in the Louisiana Civil Code, when the debt for which it exists is extinguished, the privilege is also extinguished."). A LOWLA privilege is accessory to and secures only the amount of the principal obligation for which it is granted. La. R.S. § 9:4862(B)(1) ("The privilege created by this Part is accessory . . . .").

The principal obligation in this matter is Fieldwood's obligation to pay Atlantic for the services Atlantic performed. Atlantic's potential LOWLA privilege is an accessory right to secure that principal obligation. Because it is accessory, any LOWLA privilege becomes extinguished if Fieldwood's obligation to Atlantic becomes extinct.

LOWLA does not define "extinguish" or "extinct." The Civil Code identifies several methods of rendering an obligation extinct: performance,[6] impossibility of performance,[7]

---

them. *See* La. Civ. Code art. 1913. An accessory obligation can be formed by contract, but a privilege can only be created by statute. *Louisiana Law of Security Devices: A Precis* § 28.2.

[6] Performance is the normal means of extinguishing an obligation. 5 Saul Litvinoff & Ronald J. Scalise Jr., Louisiana Civil Law Treatise, Law Of Obligations § 13.2 (2d ed. 2021). When the obligation is a debt of money, performance is payment in full. *See id.* ("[P]erformance consists [of] paying a sum of money owed to the creditor." Paying the sum of money owed logically means paying the full amount owed.); *see also* La. Civ. Code art. 1861 ("An obligee may refuse to accept a partial performance."); *Gulf Coast Bank & Tr. Co. v. Elmore*, 57 So. 3d 553, 555 (La. Ct. App. 2011) ("[H]is obligation was not extinguished through performance, i.e. repayment."); *Woodward v. Inv'rs-Ryan*, 600 So. 2d 855, 859 (La. Ct. App. 1992), *writ denied*, 604 So. 2d 1304 (La. 1992) ("The record shows that the original note to American Bank in the amount of $791,200.00 was marked 'Paid In Full' dated April 18, 1987. Performance by the obligor extinguishes the obligation.").

[7] Impossibility of performance is treated as a force majeure. La. Civ. Code art. 1873 ("An obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible.").

novation, remission of debt,[8] compensation,[9] and confusion.[10]  La. Civ. Code arts. 1854–1905.  However, this list is not necessarily all-encompassing:

> Every obligation is the correlative of a corresponding right, and when the right is destroyed, the obligation necessarily falls with it. This seems plain enough in reason and common sense, and is only confused by the groundless assumption . . . that obligations can only be extinguished by one of the nine modes mentioned in article 2130 of the Civil Code [the earlier version of Articles 1854–1905], and by [the] claim that, as not one of these modes has operated to extinguish this obligation, it must *ex necessitate rei*, continue to exist.

*People's Bank v. Cage*, 3 So. 721, 722 (La. 1888).[11]  *But see Hartford Fire Ins. Co. v. Nottingham Const. Co., LLC*, No. 11-590-BAJ-SCR, 2012 WL 5997227, at *3 (M.D. La. Nov. 30, 2012) ("Under the Louisiana Civil Code, obligations are extinguished in six ways . . . .").

Black's Law Dictionary defines "extinct" as "no longer in existence or use" or, if of a debt, "lacking a claimant."[12]  *Extinct*, BLACK'S LAW DICTIONARY (11th ed. 2019).  Under former Article 3411 of the Louisiana Civil Code (1870), a mortgage could be extinguished by "extinction of the thing mortgaged."  La. Civ. Code art. 3411 (1870) (1940 compiled ed.).  The Fifth Circuit recognized that when a mortgaged building is physically destroyed, the mortgage is extinguished.  *Ross v. Marrero (In re Dibert, Bancroft & Ross Co., Ltd.)*, 117 F.3d 160, 171 (5th Cir. 1997).

---

[8] Remission of debt is a release from the obligation to pay the debt.  La. Civ. Code art. 1888, rev. cmnt. (d) ("The expression 'remission of debt' has been preserved after carefully weighing the advisability of adopting the term 'release,' which perhaps better conveys the intended meaning.").

[9] Compensation is offset.  La. Civ. Code art. 1893 ("Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.").

[10] Confusion is where the obligor and obligee become the same person.  La. Civ. Code art. 1903 ("When the qualities of obligee and obligor are united in the same person, the obligation is extinguished by confusion.").

[11] Article 2130 of the 1870 Civil Code includes nine modes by which obligations are extinguished: payment, novation, voluntary remission, compensation, confusion, the loss of the thing, nullity or recission, the effect of the dissolving condition, and prescription.  La. Civ. Code art. 2130 (1870) (1940 compiled ed.).

[12] A claimant is "[s]omeone who asserts a right or demand . . . ."  *Claimant*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Therefore, the destruction of a corporeal thing is the extinction of that thing. The Fifth Circuit also indicated that incorporeal property, such as a leasehold interest, may not be destroyed, but terminated. *Id.* ("[A]n incorporeal [thing] . . . is susceptible not of destruction but of extinction, such as when it terminates by its express provisions, by the mutual consent of the parties, or by operation of law."). Termination also results in extinction.[13] Neither the Court in its survey of Louisiana law nor the parties in their briefings identify an unusual definition of "extinct." The Court interprets "extinct" in accordance with the common definitions: terminated, destroyed, or no longer in existence. *See* La. R.S. § 1:3 ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language."); La. Civ. Code art. 11 ("The words of a law must be given their generally prevailing meaning.").

Fieldwood's debt to Atlantic was discharged upon the Effective Date of Fieldwood's Plan. *See* 11 U.S.C. § 1141(d)(1)(A) ("[T]he confirmation of a plan . . . discharges the debtor from any debt that arose before the date of such confirmation . . . ."). However, a bankruptcy discharge—standing alone—does not extinguish a debt; it merely terminates personal liability on the debt. *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 53 (5th Cir. 1993) ("A discharge in

---

[13] "Extinguish" and "extinct" appear to be used interchangeably in some instances. Black's Law Dictionary defines "extinguish" as "[t]o bring to an end" and "[t]o terminate or cancel." *Extinguish*, BLACK'S LAW DICTIONARY (11th ed. 2019). In these definitions, "extinguish" is a verb by which something becomes extinct. The terms can, and have, been rewritten such that derivations of "extinguish" are used as adjectives and "extinct" as verbs. Civil Code Article 3277 says that "privileges become extinct by the extinction of debt which gave birth to them." This phrasing, though it uses "extinct" twice, is like LOWLA's use of "extinguished" and "extinction" to describe the extinguishment of a privilege. La. R.S. § 9:4864 ("The privilege is extinguished upon extinction of the obligation it secures."). Article 1854, titled "Extinction by performance," says that "[p]erformance by the obligor extinguishes the obligation." Given Article 1854's title, performance by an obligor which extinguishes an obligation constitutes extinction by performance. The use of "extinguish" in the Louisiana Private Works Act is further evidence of the conflation. *See* Michael H. Rubin, *Ruminations on the Louisiana Private Works Act*, 58 La. L. Rev. 569, 612 (1998). ("The obligation which the [Louisiana Private Works Act] lien secures is the amount owed to the lien claimant, and payment of the principal obligation extinguishes the accessory obligation." Under Section 4823 of the Private Works Act, a privilege is extinguished if the obligation that it secures is extinguished.); Patricia H. Chicoine, *Lien on Lowla; It's A Privilege: Recent Revisions to the Louisiana Oil Well Lien Act*, 57 La. L. Rev. 1133, 1135 (1997) ("The new structure [of LOWLA] conforms to recent dictates of the Louisiana Law Institute and, in that regard, closely resembles the Louisiana Private Works Act."). The Court is not aware of a meaningful distinction between the terms.

bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt."); *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997) (same); *Dillard v. U.S. (In re Dillard)*, 118 B.R. 89, 93 (Bankr. N.D. Ill. 1990) ("[P]re-petition lien obligations are not 'unenforceable' in the sense that all rights to collect on those obligations were extinguished by the bankruptcy discharge of the underlying debt . . . [but] the lien holder cannot enforce the obligations for unpaid debts personally against the debtor."); *Nolan v. Audubon Ins. Grp.*, 59 So. 3d 487, 489 (La. Ct. App. 2011) ("[J]ust because the banks are prohibited from attempting to collect the discharged debt from the [debtors] personally does not mean that the debt itself is extinguished or that the banks can not [*sic*] go after a third party."); *O'Neill v. D. H. Holmes Co.*, 232 So. 2d 849, 850 (La. Ct. App. 1970) ("It is a well established principle of law that a discharge in bankruptcy does not extinguish or cancel the discharged debt, but merely serves as a bar to the legal enforcement thereof."); *Bordelon v. X-L Fin. Co.*, 227 So. 2d 654, 656 (La. Ct. App. 1969); *Household Fin. Corp. of Baton Rouge v. LeJeune*, 205 So. 2d 771, 774 (La. Ct. App. 1967).

If the Plan merely discharged the obligation, the answer would be straightforward. The rub is that Fieldwood's Plan provides for more than a bankruptcy discharge. Fieldwood's Plan also determines that Atlantic's claim, regardless of whether a distribution was made, was also satisfied and settled. Section 10.3 of the Plan states:

> Upon the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, the distributions, rights and treatment to be made under the Plan, shall be in **complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever**, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their Assets or properties, **regardless of whether any property shall have been distributed or retained** pursuant to the Plan on account of such Claims and Interests . . . .

(Case No. 20-33948, ECF No. 2008 at 81) (emphasis added). Section 6.8 of the Plan states: "Unless otherwise provided herein, any distributions and deliveries to be made on account of Allowed Claims under the Plan shall be in complete and final satisfaction, settlement, and discharge of and exchange for such Allowed Claims." (Case No. 20-33948, ECF No. 2008 at 69).

In the Court's oral ruling, it reasoned that "satisfaction" and "settlement" should be understood as colloquial terms dealing with a discharge. (ECF No. 141 at 8). The Court's ruling was based in part on its understanding that neither the Plan nor the Disclosure Statement state "in plain English that the consequence of the Plan is such that the . . . [LOWLA] liens . . . would go away." (ECF No. 141 at 5). As discussed above, the Court was mistaken: the Disclosure Statement references Fieldwood's intent that the Plan's effect would be to extinguish Atlantic's alleged LOWLA liens. (*See* Case No. 20-33948, ECF No. 1285 at 57–58). The Court must reverse its earlier ruling that "satisfaction" and "settlement" should be understood as colloquial terms dealing with a discharge.

Atlantic was on notice that Fieldwood was attempting to extinguish Atlantic's alleged LOWLA liens in its bankruptcy process. Fieldwood adequately disclosed via the Disclosure Statement, the amended complaint in this adversary proceeding, and through other filings that it intended that any privileges would be extinguished as a result of the "satisfaction" and "settlement" language. These terms were not boilerplate terms without intentionality. Because "satisfaction" and "settlement" should not be interpreted merely as colloquial terms dealing with a discharge, they should be given effect and interpreted according to their plain meaning. *Reliant Energy Servs., Inc. v. Enron Can. Corp.*, 349 F.3d 816, 822 (5th Cir. 2003) ("When a contract is expressed in unambiguous language, its terms will be given their plain meaning and will be enforced as

written."); *Padilla v. Wells Fargo Home Mortg., Inc. (In re Padilla)*, 379 B.R. 643, 663 (Bankr. S.D. Tex. 2007) ("A confirmed plan constitutes a new contract between the debtor and creditors.").

"Satisfaction" means "[t]he giving of something with the intention, express or implied, that it is to extinguish some existing legal or moral obligation." *Satisfaction*, BLACK'S LAW DICTIONARY (11th ed. 2019). Further, the satisfaction of a lien is "[t]he fulfillment of all obligations made the subject of a lien." *Satisfaction of Lien*, BLACK'S LAW DICTIONARY (11th ed. 2019). A settlement is "[a]n agreement ending a dispute or lawsuit." *Settlement*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Under the plain meaning of "satisfaction" and "satisfaction of a lien," Fieldwood's obligation to Atlantic, instead of simply being discharged, was fulfilled and extinguished. In sum, Fieldwood's obligation to Atlantic ceased to exist after it was satisfied. An obligation that ceases to exist is extinct. When the obligation became extinct, Atlantic's alleged LOWLA privileges were extinguished. La. R.S. § 9:4864(B)(1). Atlantic's alleged LOWLA privileges were extinguished by the "satisfaction" and "settlement" language in Fieldwood's Plan.

The Plan was confirmed and the time to appeal the Plan has passed. FED. R. BANKR. PROC. 8002. A confirmed plan is binding on all creditors. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 276 (2010). *See also* 8 COLLIER ON BANKRUPTCY ¶ 1141.02 (Richard Levin & Henry J. Sommer eds., 16th ed. 2021) ("A creditor must object to plan confirmation, and if the bankruptcy court overrules the objection, the objecting creditor must take an appeal of the order."). Moreover, Atlantic participated in the confirmation process. Atlantic had notice of the provisions and did not appeal them. The language binds Atlantic. *Espinosa*, 559 U.S. at 276.

In support of its position, Atlantic cites to cases that prevent non-consensual third-party releases based on the treatment of a debtor's liabilities and obligations in its plan. *Austin*

*Hardwoods, Inc. v. Vanden Berghe*, 917 S.W.2d 320 (Tex. App.–El Paso 1995, writ denied); *R.I.D.C. Indus. Dev. Fund v. Snyder*, 539 F.2d 487, 490 n.3 (5th Cir. 1976); *U.S. v. Stribling Flying Serv., Inc.*, 734 F.2d 221, 222–23 (5th Cir. 1984); *Sandy Ridge Dev. Corp. v. La. Nat'l Bank*, 881 F.2d 1346, 1350 (5th Cir. 1989); *NCNB Tex. Nat'l Bank v. Johnson*, 11 F.3d 1260, 1266 (5th Cir. 1994). LOWLA privileges apply to property, not working interest owners who own the property. *Guichard Drilling Co. v. Alpine Energy Servs., Inc.*, 657 So. 2d 1307, 1312 (La. 1995) ("It is well settled under the Oil Well Lien Act that the privilege created by La. R.S. 9:4861 attaches to all property listed in the statute, regardless of ownership, and requires no contractual relationship between the supplier of labor, service, or equipment and the owner of the lease or equipment."). The extinguishment of LOLWA privileges under Louisiana law after satisfaction of Atlantic's claim is not a third-party release in Fieldwood's Plan.[14] The cases Atlantic cites are inapposite in that they hold that the bankruptcy plan cannot non-consensually release third parties.[15] But, even if the provisions could be analogized to a third-party release, it was incumbent on Atlantic to appeal. *Espinosa*, 559 U.S. at 276.

The Court is similarly unpersuaded by Atlantic's argument that the property owes the relevant obligation. (ECF No. 119 at 7). This argument conflicts with the plain reading of LOWLA. While these obligations attach to property, obligations referenced in LOWLA are not "incurred by the property where the work was performed." (ECF No. 119 at 7). LOWLA lists obligations for which LOWLA grants a privilege. La. R.S. § 4862(A). LOWLA does not create the obligations. It secures them.[16] Atlantic argues that LOWLA obligations are separate and

---

[14] In a similar vein, this outcome does not violate § 524(e). The Court's ruling is not based on the discharge.

[15] The working interest owners have no personal liability with regard to Atlantic's privileges. *Guichard*, 657 So. 2d at 1315. The Plan does not constitute a third-party release when there is no liable third-party to release.

[16] "Persons" have a LOWLA privilege to secure obligations incurred in operations. La. R.S. § 9:4862(A).

independent of any contractual obligation, and so its LOWLA claims should pass through Fieldwood's bankruptcy unimpaired absent a consensual non-debtor release. (ECF No. 119 at 7–9). While it may be true that a LOWLA privilege is *in rem* and creates no personal obligations,[17] the initial obligation is incurred by an obligor and its extinction is fatal to the privilege.[18]

LOWLA's purpose is to protect those who contribute labor, services, and equipment to the drilling of wells from default of those who engage them:

> The legislature has made a policy decision that the lease owners are in a far better position to ensure payment for the subcontractor's services than is the subcontractor, and that the onus should be on the lease owners to ensure that the contractor it hires is solvent and that it actually makes payment to the subcontractor.

*Guichard*, 657 So. 2d at 1313. Nevertheless, the Court must follow LOWLA's direction on extinguishing privileges.

### III. RULE 3016 DOES NOT APPLY

The Court previously ruled that Fieldwood violated Bankruptcy Rule of Procedure 3016(c). The Court misinterpreted what the Plan does. Under Bankruptcy Rule 3016(c), "[i]f a plan provides for an injunction against conduct not otherwise enjoined under the Code, the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined text) all acts to be enjoined and identify the entities that would be subject to the injunction." FED. R. BANKR. P. 3016. Fieldwood's Plan does not seek an injunction keeping Atlantic from pursuing its LOWLA liens. Instead, Fieldwood sought a declaration that the Plan extinguished any potential LOWLA liens. (Case No. 20-33948, ECF No. 1285 at 57–58). Because the Plan does not provide

---

[17] A privilege is the grant of a right, but only over certain property. A LOWLA privilege does not create personal liability for a working interest owner. *See Guichard*, 657 So. 2d at 1315 ("[N]o personal liability is created by the privilege on the part of the owners of property subject to the privilege.").

[18] Atlantic also mentions that LOWLA creates obligations: "The 'obligations' created by LOWLA are not contractual . . . ." (ECF No. 119 at 7). LOWLA does not create obligations. Obligors create obligations via their operations, certain of which are secured under LOWLA via privileges.

for an injunction preventing Atlantic from pursuing its alleged LOWLA liens, Fieldwood did not violate Rule 3016.

## CONCLUSION

Not later than March 9, 2022, the parties must either (i) submit a proposed judgment, agreed as to form; or (ii) file a statement identifying any unresolved issues.

SIGNED 02/23/2022

_____
Marvin Isgur
United States Bankruptcy Judge